IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KARL A. BOYTER,<br>TDCJ #1582369, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. H-09-4132 |
| BRAZOS COUNTY, *et al.*, | §<br>§ | |
| Defendants. | §<br>§ | |

## MEMORANDUM AND ORDER

State inmate Karl A. Boyter (TDCJ #1582369, former TDCJ #692272 & #607208) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the conditions of his confinement at the Brazos County Jail.  He proceeds *pro se* and he has been granted leave to proceed *in forma pauperis*.  At the Court's request, Boyter has filed a more definite statement of his claims.  After screening all of the pleadings as required by 28 U.S.C. § 1915A, the Court requested an answer from the defendants.  One of those defendants, Dr. Rick Seabolt, has filed a motion to dismiss the complaint against him for failure to state a claim [Doc. # 15].  Boyter has not filed a response and his time to do so has expired. After reviewing all of the pleadings, and the applicable law, the Court **denies** the motion for reasons that follow.

## I.      BACKGROUND

Boyter is presently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the Beto Unit.  Boyter filed a civil rights

complaint under 42 U.S.C. § 1983, alleging that he was denied adequate medical care while he was in custody as a pretrial detainee at the Brazos County Jail in early 2009.  Boyter sues Brazos County, Texas, and three supervisory officials in charge of the Jail, including Brazos County Sheriff Christopher Kirk, Deputy Sheriff Jim Mann, and Jail Administrator Wayne Dickey.  Boyter also sues an orthopedic specialist, Dr. Rick Seabolt, who treated Boyter for injuries that he sustained while in custody at the Brazos County Jail.  Boyter's allegations are summarized briefly below.

Boyter reports that he was arrested on January 12, 2009, and charged with burglary of a habitation in Brazos County case number 09-01018-CRF-85.  While he was in custody as a pretrial detainee at the Brazos County Jail, Boyter was assigned to work as an "Outside Trusty" on the "Road and Bridge Crew."  Boyter alleges that, in February of 2009, he was assigned to perform work picking up "trash and brush" at the side of the road.  Boyter claims that he was injured while performing this task after a "piece of board" suddenly struck his knee cap, causing him to fall awkwardly and twist his right knee.  Boyter, whose knee was bloodied as a result, found it "painful and difficult" to walk after this incident.

A supervisor on the work detail (Deputy Favilla) instructed Boyter to submit a sick call if the pain in his knee became worse.  Boyter states that, three days after he sustained the injury, his right knee was swollen badly.  A nurse at the Jail (Ms. White) examined Boyter's knee and placed orders for x-rays, among other things, to determine the extent of the damage. Sometime thereafter, "Bryan Radiology" came to the Jail and took x-rays of Boyter's knee. The x-rays disclosed no broken bones or foreign objects in the knee, but Boyter continued

to have pain.

In March of 2009, Boyter filed a grievance requesting additional treatment. Boyter was transported from the Jail to "St. Joseph's Express Emergency Care" for an examination of his right knee. Doctors at the St. Joseph's facility determined that Boyter needed to see an orthopedic specialist. A nurse at the Jail reportedly told Boyter that it could "take some time" to find an orthopedic specialist to treat him because "Brazos County Medical Insurance" only covers about 60% of the costs for "seeing an outside doctor."

On May 1, 2009, Boyter filed another grievance to request medical treatment for his injured knee. On May 8, 2009, Boyter was transported from the Jail to Dr. Seabolt's office in Bryan. Boyter alleges that, without even examining his right knee, Dr. Seabolt dismissed the injury as a bruised muscle. Boyter claims that Dr. Seabolt told him to "keep his leg elevated" and wrapped with an "Ace" bandage, but offered no other treatment before sending him back to the Jail. Boyter insists that he told Dr. Seabolt about the extent of his "medical need" for treatment by a specialist, as determined by doctors at St. Joseph's Hospital, but that Dr. Seabolt "chose to ignore the injury" and refused to help.

On May 24, 2009, Boyter submitted another sick call request to the Jail medical department, complaining of pain in his knee. Shortly thereafter, Boyter was transported to St. Joseph's Express Emergency Care for a second time. Boyter reports that doctors at St. Joseph's told him, once again, that he needed to see an orthopedic specialist. Boyter was then transported to Dr. Seabolt's office for another examination. This time, Dr. Seabolt determined that Boyter's injury was "extensive enough" to need surgery. Boyter claims that

an appointment for surgery was scheduled for May 31, 2009, but cancelled for unexplained reasons.  Subsequent appointments set for June 30, 2009, and July 16, 2009, were also cancelled without explanation.  Boyter, who was convicted of the burglary charges against him on May 22, 2009, was eventually transferred to TDCJ on July 27, 2009.

Boyter states that, upon his arrival at TDCJ, he was transported to the University of Texas Medical Branch ("UTMB") Hospital in Galveston, where an orthopedic specialist determined that he needed surgery to repair damaged ligaments in his injured right knee.  On October 23, 2009, Boyter had surgery to repair his "MTS" and to replace his "ACL."  Boyter claims that, by the time he had surgery, his right knee was "so badly swollen and painful" that he was "unable to walk and had to be confined to a wheelchair."

Boyter complains that, as supervisory officials in charge of the Brazos County Jail, Sheriff Kirk, Deputy Mann, and Administrator Dickey failed to adopt sufficient policies to provide reasonable and adequate medical care.  Boyter claims that, as a result of deficient policies, he was denied knee surgery while in custody at the Jail and his access to necessary treatment was delayed until he was transported to TDCJ.  In particular, Boyter complains that Brazos County does not have an adequate insurance policy to cover medical costs and treatment of detainees when such treatment is needed from specialists "outside the Jail."

In addition, Boyter complains that Dr. Seabolt demonstrated "gross incompetence" by performing a "recklessly inadequate examination" of his right knee during his initial appointment on May 8, 2009.  Boyter insists that Dr. Seabolt acted with deliberate indifference and reckless disregard for his constitutional right to receive reasonable and

adequate medical care.

Boyter complains that, by failing to provide adequate medical care, or delaying access to adequate medical care, the defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution.  Boyter seeks compensatory, punitive, and nominal damages for his physical pain, suffering, misery, anguish, anxiety, and incapacity.

Dr. Seabolt has filed a motion to dismiss the complaint against him for failure to state a claim.  Boyter has not filed a response.  The motion, as well as the pleadings, are addressed below under the governing standard of review.

## II.     STANDARD OF REVIEW

The motion filed by Dr. Seabolt is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Motions to dismiss under Rule 12(b)(6) are appropriate only where the plaintiff's complaint fails to state a claim upon which relief can be granted.  Federal pleading rules require only "a short and plain statement of the claim" showing that the pleader is entitled to relief.  FED. R. CIV. P. 8(a).  As the Supreme Court has emphasized, Rule 8 does not require "heightened fact pleading of specifics," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or "detailed factual allegations."  *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009).  In reviewing a motion under Rule 12(b)(6), a court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (citation omitted).

To withstand a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555

(citations omitted).  A plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  Under this standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, U.S. at 556).  In making this determination, the Court is mindful that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Bustos*, 599 F.3d at 461-62 (citation omitted).  Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972).

## III.  DISCUSSION

As outlined above, Boyter alleges that he was denied medical care, or that adequate medical care was delayed, for a knee injury that he suffered while in custody as a pretrial detainee at the Brazos County Jail.  Dr. Seabolt, who examined Boyter while he was in custody at the Jail, argues that the complaint must be dismissed because Boyter fails to allege "actionable conduct" under 42 U.S.C. § 1983.  In that regard, Dr. Seabolt argues that Boyter omits "[e]ssential elements pertaining to pursuit of a healthcare liability claim" and that there is "no causal link" between Dr. Seabolt's conduct and the damages alleged.  Boyter's complaint is reviewed below under the legal standard that governs claims by pretrial detainees.

Boyter filed the complaint in this case under the civil rights statute found at 42 U.S.C. § 1983.  Section 1983 provides a private right of action for damages to individuals who are

6

deprived of "any rights, privileges, or immunities" protected by the Constitution or federal law by any person acting under the color of state law.  To establish liability under § 1983, a civil rights plaintiff must satisfy two elements:  (1) state action, *i.e.*, that the conduct complained of was committed under color of state law, and (2) a resulting violation of federal law, *i.e.,* that the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Baker v. McCollan*, 443 U.S. 137, 142 (1979).

Boyter alleges that Dr. Seabolt denied him adequate medical care, or that care was delayed, in violation of the Eighth Amendment and the Fourteenth Amendment to the United States Constitution.  The Eighth Amendment, which focuses on prohibiting conditions that are unduly punitive, applies primarily to prisoners who have been convicted and sentenced for an offense.  *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). Because a pretrial detainee has not been duly convicted or sentenced, the constitutional rights of these inmates are protected by the Due Process Clause of the Fourteenth Amendment, *see Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525-26 (5th Cir. 1999), which dictates that "a pretrial detainee may not be punished." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (explaining that "[d]ue process requires that a pretrial detainee not be punished," whereas a "sentenced inmate . . . may be punished, although that punishment may not be "cruel and unusual' under the Eighth Amendment").  Thus, the Supreme Court has articulated the following distinction when considering the claims of pretrial detainees:

Eighth Amendment scrutiny is appropriate only after the State has complied

with the constitutional guarantees traditionally associated with criminal prosecutions. *See United States v. Lovett*, 328 U.S. 303, 317-318, 66 S. Ct. 1073, 1079-1080, 90 L. Ed. 1252 (1946). . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Bell*, 441 U.S. at 535 n.16 (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-672, n.40 (1977)).  Boyter was not convicted of the burglary charges against him until May 22, 2009. To the extent that Boyter complains of harm that occurred while he was a pretrial detainee, his claim arises under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment.[1] *See Hare*, 74 F.3d at 639 (explaining that pretrial detainees and convicted prisoners "look to different constitutional provisions for their respective rights to basic needs, such as medical care and safety").

The Fourteenth Amendment requires the state to provide for the "basic human needs" of pretrial detainees, including the right to adequate medical care.  *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996); *see also Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) ("[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with

---

[1]     The Fifth Circuit has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care. *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc)).  In that regard, the same standard governs constitutional claims concerning medical care by pretrial detainees and convicted inmates. *See id.*  Therefore, the plaintiff's status as a pretrial detainee does not appear to make a meaningful difference under the circumstances of this case.

deliberate indifference on the part of the confining officials."). Because Boyter's complaint concerns an "episodic act or omission," he must demonstrate that the defendant acted with deliberate indifference to his serious medical needs. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)). To satisfy this standard, a plaintiff must allege facts showing that "the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).

The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* (citations omitted). A showing of deliberate indifference requires the inmate to demonstrate that officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citations omitted).

As outlined above, Boyter alleges that Brazos County officials transported him to Dr. Seabolt's office after doctors at St. Joseph's Hospital determined that he needed treatment

by an orthopedic specialist.  Boyter complains that, at an appointment on May 8, 2009, Dr. Seabolt conducting only a cursory examination and refused to provide meaningful treatment for his injured knee.  Boyter notes that, during a second examination that occurred sometime before May 31, 2009, Dr. Seabolt determined that Boyter needed knee surgery.  The surgery was delayed, however, for reasons that are not explained, until after Boyter was transferred to TDCJ.  Boyter alleges that he was in pain and confined to a wheelchair as a result of the delay.  An inmate may have a viable claim for delayed medical treatment where there has been deliberate indifference, "which results in . . . substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) (citations omitted).  The Fifth Circuit has held that the suffering of pain is sufficient to demonstrate the requisite harm to support a claim for delayed access to medical care, provided that "deliberate indifference" is established. *Thomkins v. Belt*, 828 F.2d 298, 301 (5th Cir. 1987).

Based on this record, Boyter alleges that Dr. Seabolt was aware of his knee injury but refused to treat him or provide proper care in a timely manner with deliberate indifference to a serious medical condition.  Viewing all of the allegations in the complaint as true, under the liberal standard that applies to *pro se* pleadings, Boyter's allegations are sufficient to state a claim against Dr. Seabolt under 42 U.S.C. § 1983.  Accordingly, the motion to dismiss must be denied.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.    The motion to dismiss [Doc. # 15] is **DENIED**.

10

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on  May 25, 2010.

Nancy F. Atlas
United States District Judge